16

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| TRANDELL ESTERS | File No. 06-CV-12020 |
| Petitioner, | U.S. District Judge Hon. Denise Page Hood |
| -V- | |
| WARDEN: RAPPELEJE | U.S. Magistrate Judge Hon. Steven D. Pete |
| Respondent, / | Clerks Copy |

Trandell Esters No.368099
Saginaw Correctional Facility
9625 Pierce Rd.
Freeland, Michigan 48623

Mr. Michael C. Cox
Attorney General State of Michigan
Criminal Appellate Division
P.O. Box 30217
Lansing, Michigan 48909

United States District Court
Eastern District of Michigan
Southern Division
Clerk of the Court
231 Lafayette Boulevard
Detroit, Michigan 48226
/

FILED
OCT 27 2008
CLERK'S OFFICE
DETROIT

* **MOTION FOR CERTIFICATE OF APPEALABILITY** *

**APPENDIX'S**

* * **PROOF OF SERVICE** * *

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FILED
OCT 27 2008
CLERK'S OFFICE
DETROIT

| | | |
|---|---|---|
| TRANDELL ESTERS | ) | File No. 06-CV-12020 |
| Petitioner, | ) | |
| -V- | ) | U.S. District Judge Hon. Denise Page Hood |
| WARDEN: RAPPELEJE | ) | U.S. Magistrate Judge Hon. Steven D. Pete |
| Respondent, / | ) | |

* **PROOF OF SERVICE** *

State of Michigan)
§§
County of Saginaw)

I, Trandell Esters, being first duly sworn, subscribe and state that on this 24 day of Oct, 2008, I served unto;

Mr. Michael C. Cox
Attorney General State of Michigan
C/O U.S. District Court Clerk
Criminal Appellate Division
P.O. Box 30217
Lansing, Michigan 48909

A copy of Petitioners "Motion for Certificate of Appealability" by mailing the same to them in a sealed envelope, addressed with postage fully prepaid theron and by depositing the same in the United States Mail in Freeland, Michigan 48623.

Respectfully submitted,

Trandell Esters

Trandell Esters

Amy Best
AMY S. BEST
NOTARY PUBLIC, STATE OF MI
COUNTY OF GRATIOT
MY COMMISSION EXPIRES Sep 5, 2011
ACTING IN COUNTY OF Saginaw
10-24-08

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

FILED
OCT 27 2008
CLERK'S OFFICE
DETROIT

TRANDELL ESTERS

Petitioner,

-V-

WARDEN: RAPPELEJE

Respondent,
/

File No.
06-CV-12020

U.S. District Judge
Hon. Denise Page Hood

U.S. Magistrate Judge
Hon. Steven D. Pete

* **MOTION FOR CERTIFICATE OF APPEALABILITY** *

The Petitioner, Trandell Esters, acting in Pro-Per ask that this Court grant this Motion for Certificate of Appealability, and further states;

1). On September 30,2008, the Honorable Justice Denise Page Hood, Denied Petitioners claims of, "the voluntariness of his police statement", "the sufficiency of the evidence", "the effectiveness of his trial counsel", and "the propriety of his sentence".

2). Respondent filed an answer to the petition asserting that it should be denied for lack of merit.

3). On or about October 24,2008, Petitioner respectfully ask upon this Court to file his Notice of Appeal along with this Application for a Certificate of Appealability.

4). Petitioner respectfully ask upon this Court to Grant him a Certificate of Appealability as to the following issues.

Issue One;

Defendant's coerced statement to police constituted a violation of defendant's Fifth and Sixth Amendment rights because it was not made voluntarily, and the trial court's admission of defendant's statement was clear error.

The U.S. Supreme Court explained in Slack v McDaniel, 529 U.S. 473,484 (2000), a certificate should be issued if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right".

This issue was denied by Justice Hood, but there are facts that should be consider in a Certificate of Appealability. In the Walker hearing (See People v Walker 375 Mich 331 (1965)), held on June 3,2002, three important facts were never consider by the trial justice the Hon. Diane Hathaway, those facts are, that Officer Barbara Simon testified that when she interrogated Petitioner on December 15,2001, that he denied any knowledge of the robbery or any participation on his part in said robbery. It was only after an intense interrogation, did she claim that Petitioner changed his story, and stated that he was there, but he still claimed his innocence (WH,Pg-4-14).

At this same hearing, Officer Andrew Sims testified that he in the cores of a polygraph examination, that Petitioner claimed his innocence, but only after and intense examination did Petitioner allegedly state that he look into the store, and told the allege co-defendants, Laron Harper and Cameron Williams who was inside the store (See WH,Pg-29-35).

Officer Anthony Jackson then testified that after the polygraph examination (that Petitioner passed), in the cores of transporting Petitioner back to the precinct, a third interrogation was conducted, where he claim that Petitioner made another statement and allegedly signed it (See WH,Pg-48-51).

Petitioner only admission of guilt was, that when he was walking out of the store, Mr. Williams and Mr. Harper asked him who was in the store (WH, Pg-82-84). The trial court never consider that some coercing must have taken place by the police, in order to place Petitioner as an aider in this arm-robbery. Petitioner only motive in talking to the police was the $10.000.00 reward posted by them and conveniently striped away, once they could place Petitioner as an aider in this arm-robbery (WH,Pg-74-78).

As stated in Petitioners writ, U.S. Const. Ams. V, XIV; Mincey v Arizona 437 US 385; 98 S.Ct 461 (1978) and Brown v Mississippi, 297 US 278,287; 56 S.Ct 461 (1936), have discussed several of the underlying values in the use of involuntary confession.

(*.WH. Walker Hearing)

The prosecutor's burden is to show by a preponderance of the evidence that Petitioner's statements were voluntarily made. People v Sears, 124 Mich App 735,738 (1983); Lego v Twomey, 404 US 477; 92 S.Ct 619 (1972), and on appeal this Court must make an independent determination of the statement's voluntariness. The appropriate test to determine voluntariness is, the totality of the circumstances. Brown v Illinois, 442 US 590,603-04; 95 S.Ct 2254 (1975).

Petitioner was confronted by two acquaintance, who ask him who was in the store, reasons only known to them. Petitioner responded and left. Once Petitioner heard of the reward offered, he contacted the police, who instead of looking at Petitioner as a helpful citizen, saw him as part of the original conspiracy and a man who now wanted to profit from this failed robbery. A nonexhausted list of circumstances must be consider by the court, which includes the length and conditions of detention, the defendant's age and mental and physical state, any inducements or offers, the police conduct, and the adequacy of the advice of rights. The ultimate test of admissibility is whether the totality of the circumstances indicates the waiver was freely and voluntary made Moran v Burbine, 475 US 412,421; 106 S.Ct 1135 (1986) as to a two prong test.

Petitioner only contacted the police after hearing of the reward. Officer Simon did testify that Petitioner denied any part in the planning or participation of the armed robbery. That Petitioner once seeing that the police were trying to connect him with the perpetrators, demanded a polygraph to prove his non-involvement, which he was vindicated by, yet the police did not want to give up the reward, and wanted a three way conviction when clearly only two participants were involved. The police through compounded interrogation, with the inducement offer of the money and the right to go home, played a sly tempered case of coercing Petitioner, till they allegedly had enough or fabricated enough to justify a warrant against him.

The Courts have frequently held that a confession induced by lies,

deception, and other false pretenses can render any alleged statements inadmissible United States v Murphy, 329 F2d 68 (CA 2,1964); People v McCullough, 81 Mich 25 (1980). In this matter, the state by and through these investigating officers, may have deliberately exaggerated Petitioners statement to benefit their case against him. They surely led him to believe that he was going home, when they had no intention of letting him go. In are society, we give the police a God like credibility. This is sometime justified, either deserved or out of fear that without them, the criminal element would be free to target anyone of us. But as we give this power, we have found so many time that power dose corrupt, and promotions do not come with failed convictions. The need for them to get that conviction any way possible, has left there credibility in question. The Courts found this out in Lisenba, that if by fraud, collusion, trickery and subornation of perjury on the part of those representing the state, results in a conviction, due process suffers and the statements allegedly made are deem inadmissible Lisenba v California, 314 US 219,237; 62 S.Ct 280 (1941).

Why would Petitioner, who was free to walk away, and did walk away, from this robbery-murder, with no one to point the finger at him, (neither of the the perpetrators, accused him or testified as to his involvement), return to the police, with statements that would involve him in the robbery-murder. These statements were concocted by the one we trust to represent justice. Petitioners only reason to contact the police was his need for money, and that was the only reason.

Petitioner would use this argument to this Court, and as stated in Slack v McDaniel, supra, at 484., that "any jurist of reason would find this debatable" and that a valid claim of the denial of Petitioners constitutional rights have taken place, and a Certificate of Appealability should be granted as to this issue in this matter.

Issue Two:

Petitioner's conviction should be vacated, and the charges dismissed, as the evidence at trial, even when viewed in a light most favorable to the prosecution, was insufficient as a matter of law to prove Petitioner aided and abetted the armed robbery.

As stated in Petitioners writ of habeas corpus, issue II, not one of the alleged co-defendant made statements to or testified that Petitioner was part of or participated in the planning or production of this un-fortunate crime of armed-robbery/murder (See T-4,86-87,93). Petitioners entire convictions stems from his alleged statements, given when he approached the police for the reward that they had offered.

Before a defendant can be convicted of a criminal affense, due process requires that the prosecution introduce sufficient evidence that could justify the jury or the trier of fact, to reasonably conclude guilt beyond a reasonable doubt. U.S. Const. Ams. V, VI, XIV; Jackson v Virginia, 443 US 307; 99 S.Ct 2781; 61 LEd2d 560 (1979); In Re Winship, 397 US 364; 90 S.Ct 1068; People v Hampton, 407 Mich 354,368 (1979).

Petitioner approached the police stating that he had knowledge of the crime and its perpetrators, trying his best to keep some distance between him and the actual perpetrators. Upon further interrogation, Petitioner found that this would not be enough to satisfy the police and there investigation, so Petitioner finally told them the complete story, that he had been existing the store at the time of the robbery. Petitioner then told the police that he knew the two perpetrators and that they had ask him who was in the store, without telling him the reason for this information. The police in there zealous need to satisfy an outrage community and save $10.000.00, began there typical coercing of Petitioner and there manipulation of every word he spoke till they had the statements they wanted, to charge Petitioner.

As stated in Issue One, we only have the officers word that Petitioner made these statements, and as stated in United States v Murphy, supra, and People v McCullough, supra, police credibility is questionable when the need to satisty

an outrage community is at stake. This Court only has to look at cases such as United States v Lochmondy, 890 F2d 817 (1989); Webb v Texas, 409 US 95; 93 S.Ct 351 (1972); People v Canter, 197 Mich App 550 (1992), in the Canter case, the police, with the prosecution knowledge, manufacture evidence to get the conviction. Then there is People v Cassell, 63 Mich App 226,229 (1975), where the chief investigating officer sat right beside the prosecutor at trial, and knew his witness was perjuring himself and yet allowed him to do it.

The police officers have a history of misconduct when comes to fabricating statements and testimony to get the convictions they want. Officer Barbara Simon testified that Petitioner denied participation in connection with this crime, Officer Andrew Sims testified that Petitioner denied knowledge of the robbery, and then stated that he did know the individuals who committed it and that they had ask him who was inside the store. It is only his word that they ask Petitioner to be a look out man after his in-depth interrogation, and the jury was never told that petitioner had passed a polygraph examination, which a guilty man would have a hard time accomplishing. Then we have Officer Anthony Jackson, who testified that Petitioner signed some alleged manufacture statement, while riding with him back to the county jail. As to Petitioners defense, Petitioner was the one who demanded a polygraph examination to prove that he was telling the truth, a Latoya Williams, alleged co-defendant who pled guilty to accessory after the fact, testified that she did not even know Petitioner, had never seen him before, until trial. Surely any state witness under a plea deal would testify that Petitioner was involved, [if] he was and then there is Tonya Lawson who testified that at the time of the crime, she had talk to Petitioner at her aunt's house.

The law is well settled that mere presence at the scene of a crime does not make a person a knowing participant in the crime. People v Butler, 413 Mich 377,384-85 (1982); People v Harper, 365 Mich 494,500 (1962); People v Burrel, 253 Mich 321,323 (1931); People v Summers, 68 Mich App 571,581-82 (1976);

People v Gordon, 60 Mich App 412,418-19 (1975); United States v Castillo, 844 F2d 1379,1392 (CA 9,1988); United States v Rackley, 742 F2d 1266,1271 (CA 11,1984). In the black community, no one wants to be known as a snitch or a reward hunter, so it would be understandable that Petitioner, in seeking this reward would not tell all aspects of his knowledge of the perpetrators, but only the information required to receive the $10.000.00 reward.

The police are the only ones, through there questionable testimony, based on there alleged interrogation, made Petitioner a participant, as a look out man. The trial court failed to consider the polices motivation, in connecting Petitioner with the three perpetrators of this crime and the requisite level of intent, was only met in there dubious testimony People v Kelly, 423 Mich 261 (1985). As an aidder and abettor, the prosecution failed to show Petitioner as a principal, in any intent. People v Zak, 184 Mich App 1,13 (1990). Intent must be shown, and the prosecution failed to show that any scheme was proven that Petitioner was in the pre-planning, execution of (other than the police testimony) or collection of any money's that would be collected, through this heinous crime. State v Penagos, 823 F.2d 346 (9th Cir.1987); United States v Lopez, 625 F.2d 889 (9th Cir.1980). In the light most favorable to the prosecution, it was only his agents, and his agents alone that convicted Petitioner. These same agents are paid by the county to see that convictions are made. The trial court completely ignored the polygraph results, and testimony by the states own witness, Latoya Williams, to introduce these statements, because the prosecution had no case against Petitioner without said evidence, a clear case of abuse of discretion.

Petitioner believes that any reasonable jurist would find it debatable, that Petitioner made these alleged statements, or in the form that was testified to, and ask that a Certificate of Appealability be granted as to this issues.

Issue Three;

Petitioner's attorney rendered constitutionally ineffective assistance of counsel and there is a reasonable probability that the outcome would have been different for failing to call several additional alibi witnesses.

Strickland v Washington, 466 US 668; 104 S.Ct 2052; 80 LEd2d 674 (1984), has been the standard for ineffective assistance of counsel, as to an objective standard of reasonableness in counsel performance. This issue is because of that reasonableness, that Petitioner would ask for a Certificate of Appealability to be granted.

Petitioner had informed counsel that he other witnesses that could testified as to his whereabouts and mental state of mind at the time of the robbery/murder People v Carines, 460 Mich 750, 757-58, (1999). The Michigan Court of Appeals found that through Petitioner's alleged statements, (testified to by the prosecution paid agents), sufficient evidence was presented to convict Petitioner.

In Beasley v United States, 491 F.2d 687 (6th Cir.1974) the court found that counsel failure to investigate or call alibi witnesses, constituted ineffective assistance of counsel. Also see Brown v Mayers, 137 F.3d 1154 (9th Cir.1998); Lawrwnce v Armontrout, 900 F.2d 127 (8th Cir.1990).

Counsel payment record is clear that he did not list any time as to investigation or alibi statements. Counsel did call one alibi witness, Tonya Lawson, and only because she could get right to the point, (see Answers to Petitioner writ of habeas corpus, Pg-17). One would think that any wasted time to convict Petitioner was unacceptable to the prosecution. This witness only testified that she had called her aunt's house from the Macomb Mall at around 3:00 p.m. and Petitioner answered the phone. This in itself does not prove that Petitioner was not involved in the robbery/murder since Petitioner did admit that he passed the two perpetrators as he was leaving the store, but these other witnesses may have sheded light on Petitioner's state of mind at the time they were in his presence, such as did he act nerves, was he in a hurry, did he talk

of coming into money soon, or did he state that he thought that something was going on at the party store that was robbed. These same witnesses may have given testimony as to what Petitioners state of mind was like just before the robbery. Did he talk of something big going to transpire within a short period of time, or that he may have to leave town for awhile or was going a trip. None of this could be consider cumulative as to Ms. Lawson's testimony, as was one of the reasons for denial by the District Court Justice Denise Hood.

As stated in McQueen v Scroggy, 99 F.3d 1302,1311 (6th Cir.1996), this error must have undermind the reliability of and confidence in the result of the verdict. Clearly trial counsel was aware of the testimony of the officers that were testifying, and knew that this was going to be a credibility contest between Petitioner and the prosecutor's agents. With these witneses, this would have added credibility to Petitioner testimony that he never made the admission of facts testified to by the police, in the form that they claimed and testified that Petitioner stated it to them.

Trying to convince a trial court that a Petitioner never made the statements the way the police testified he did, is almost a god like challenge, and no citizen, without a tape recorder could ever hope to win in that kind of argument, once Petitioner was in there custody, they could say he said what ever they wanted him to, and the benefit would always be given to the police, or the light most favorable to the prosecution. Trial counsel knew this and should have took every precaution to enhance the credibility of Petitioner by introducing supporting witnesses. This Court knows this all to be true, and counsel was ineffective in his failing to call alibi witnesses to aid in the supporting of Petitioners testimony and denial of the officers testimony, did prejudice Petitioner in his Sixth Amendment right to effective assistance of counsel Strickland, supra, at 466 U.S. at 686-687.

Therefore. Petitioner would ask for a Certificate of Appealalbility as to this issue.

Issue Four:

Petitioner is entitled to resentencing because the trial court violated the Sixth Amendment when scoring offense variable to enhance the sentencing.

The Petitioner in this matter, relies on his previous submitted argument, in his writ of habeas corpus, denied by this Court. Petitioner would ask that this Court reconsider some questionable facts that the trial court relied on in sentencing Petitioner Townsend v Burke, 334 U.S. 736,741 (1948); United States v Tucker, 404 U.S. 443,447 (1972).

One fact that stands out is, that Petitioner did take a polygraph, at his own request and did pass, that his statements were not voluntary and that they had been manipulated by the police, to implicate his participation in this robbery/murder Mincey v Arizona, 437 U.S. 385; 98 S.Ct 2408; 57 LED2d 290 (1978); Brown v Mississippi, 297 U.S. 278,287; 56 S.Ct 461; 80 LEd2d 682 (1936). What make this important is, that the trial Court solely depended on the alleged statements, that Pettitoner allegedly made to the police, to convict Petitioner.

The trial Court assumes that the police are always telling the truth, which history has shown, is not always the case. See United States v Lochmondy, Supra at 817; Webb v Texas, Supra, at 409 U.S. 95 and especially People v Canter, at 197 MA 550. If ever a case shows the extent that both the police and the prosecution would go to in winning a case, the Canter case does. The Court accepted the statements of Shantel Littlejohn, even though she knew defendant Harper by name, yet did not name him at first out of fear (See 6,10,02 Police report, and Harper's Preliminary examination). As a women she could claim fear, yet Petitioner as a man or young man, could not claim this, a fear of the two alleged co-defendant's, in his reason's for not telling the police up front, that he knew the two and had seen them entering the store. It was only after the reward money they offered, that Petitioner became involved. Petitioner was on probation, pressed by the Court to pay for this probation, along with court fines, and other cost, the reward money would have covered these expenditures.

Clearly the police practice sex discrimination in a reason for not telling

the whole truth. The trial court completely ignored these facts in sentencing Petitioner. The jury failed to convict Petitioner of any violence in this matter and the statutes does not apply under OV-3. If the jury would have been allowed to consider the polygraph results, there is a good possibility that there would have been no conviction to consider, a point that is factual and was not consider by the trial court United States v Sammons, 918 F.2d 592,603 (6th Cir.1990) and any false statments made, would be in the testimony of the officer Andrew Sims, as to the forcible statement that he made Petitioner sign, and also officer Anthony Jackson and his testimony as to Petitioner statement allegedly made to him.

Officer Sims testimony completely contradict his own testing, Petitioner clearly had no chance to correct this, either by Petitioner own counsel failure to petition for a retaking of the polygraph test or the trial courts failure to apply the results of this test to stay within the guidelines. Citing this courts own ruling, United States v Polselli, 747 F.2d 356,358 (6th Cir.1984). Under Slack v McDaniel, supra, at 484., any reasonable jurist would find it debatable rather Petitioner made these statement or not with only the officers credibility to claim he did.

Petitioner ask that this Court consider these reasons for Granting Petitioner a Certificate of Appealability as to this issue.

* CONCLUSION *

**THEREFORE**, Petitioner would ask upon this Honorable Court to reconsider its **Denial with Prejudice**, and **Grant** Petitioner a Certificate of Appealability as to the issues presented to this Court.

Respectfully submitted,

Date: 10-24-08

Trandell Esters

Trandell Esters

* **APPENDIX'S A.** *

United States District Justice the **Hon. Denise Page Hood**, Opinion and Judgment dated September 30,2008, in the matter of Trandell Esters v Warden Jan Trombley, Case No. 06-CV-12020.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRANDELL ESTERS,

Petitioner,

v.

CASE NO. 06-CV-12020
HONORABLE DENISE PAGE HOOD

JAN TROMBLEY,

Respondent.
_____________________________________/

**JUDGMENT**

The above-entitled matter having come before the Court on a Petition for Writ of Habeas Corpus, Honorable Denise Page Hood, United States District Judge, presiding, and in accordance with the Opinion and Order entered on this date;

**IT IS ORDERED AND ADJUDGED** that the Petition for Writ of Habeas Corpus is **DENIED** and **DISMISSED WITH PREJUDICE.**

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: September 30, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 30, 2008, by electronic and/or ordinary mail.

S/William F. Lewis
Case Manager

**FEDERAL COURT**

| Prisoner-Plaintiff/Petitioner/Appellant name and number | v | Defendant's/Respondent's/Appellee's name |
|---|---|---|
| Trandell Esters/#368099 | | Attorney General |

**CERTIFICATE OF PRISONER INSTITUTIONAL/TRUST FUND ACCOUNT ACTIVITY**

I am employed by the Michigan Department of Corrections at the facility identified below, at which the prisoner identified as Plaintiff/Petitioner/Appellant is currently incarcerated.

Attached is a computer printout which accurately reflects the current spendable balance and all activity within this prisoner's account during the preceding six months or, if the prisoner has been incarcerated for less than six months, for the period of incarceration. Code "C" on the printout represents a withdrawal from the account and code "D" represents a deposit to the account. The attached printout reflects, for the reported period, an average monthly account deposit (i.e., total deposits divided by number of months) of $154.52, an average monthly account balance (i.e., total deposits minus total withdrawals divided by number of months) of $3.74. There is a current spendable account balance of $281.14.

Date: 10/17/08

[signature]

Signature of Custodian of Prisoner Institutional/Trust Fund Account

Saginaw Correctional Facility

Correctional Facility